UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| R.T. CASEY, INC. | * | CIVIL ACTION |
| | * | |
| | * | NO.  11-2794 |
| VERSUS | * | |
| | * | SECTION |
| | * | |
| CORDOVA TELEPHONE COOPERATIVE, INC. | * | JUDGE |
| AND | * | |
| MID-STATE CONSULTANTS, INC. | * | MAGISTRATE |
| * * * * * * * * * * * * * * * * * * * | * | |

## COMPLAINT

NOW INTO COURT, comes plaintiff, R.T. Casey, Inc. to file this complaint against the defendants, Cordova Telephone Cooperative, Inc. and Mid-State Consultants, Inc.

**I.**
**PARTIES**

R.T. Casey, Inc., a corporation organized under the laws of Louisiana, ("Casey"), entered into a contract dated January 24, 2011, which was subsequently amended in March and April of 2011, with Cordova Telephone Cooperative, Inc., a corporation organized under the laws of Alaska, ("Cordova") agreeing to supply and install undersea optical fiber cable to Cordova for the sum of $9,726,095.00 (the "Contract").

## II.

Mid-State Consultants, Inc., a corporation organized under the laws of Utah ("Mid-State") was retained by Cordova to prepare and administer the Contract.

## III.
## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

## IV.

Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

## V.

Casey fully and completely performed its obligation to install the cable as provided under the Contract. On or about August 9, 2011, Cordova took possession and has since that time made full use of the cable.

## VI.

On August 29, 2011, Casey submitted to Cordova its invoice for payment no. 6 under the Contract in the amount of $611,609.50.

## VII.

On August 31, 2011, Mid-State advised Casey that its invoice for payment no. 6 was rejected, allegedly because the Final Route Survey Report submitted by Casey did not comply with the Contract requirements.

**VIII.**

Thereafter, on September 2, 2011 Mid-State submitted to Casey detailed written specification of information to be included in the Final Route Survey Report that it claimed was required by the Contract.

**IX.**

The Contract prepared by Mid-State contained no details or specifications regarding the contents and details of the final route survey. The Contract simply defined the "Final Route Survey Report" as the "final route survey as supplied by [Casey] upon completion of the work."

**X.**

The Final Route Survey Report submitted by Casey fully satisfied the requirements of the Contract. Casey provided Mid-State and Cordova with a certification from a recognized authority in the industry that the report met all industry standards.

**XI.**

Cordova and Mid-State have refused to process Casey's payment No. 6 in the amount of $611,609.50 or pay the retention due Casey in the amount of $455,724.28, for a total balance due on the Contract of $1,067,333.78.

**XII.**

In accordance with the Contract and information provided by Mid-State, Casey pulled the cable through a conduit line that was previously installed by other contractors retained by Cordova under a separate contract, which work was also performed under the administration of Mid-State. On or about August 9, 2011, the installation of the cable was completed, tested by third party experts, inspected and accepted by Mid-State and Cordova.

**XIII.**

Sometime in mid-September 2011, the construction of the conduit failed causing it to rise from the sea bottom and dragging the cable up with it.

**XIV.**

On September 16, 2011, Mid-State issued a work directive to Casey to immediately take action to secure the conduit to the sea floor and to rebury the cable.

**XV.**

In accordance with the work directive issued by Mid-State, Casey performed the work. The cost of performing said work is $75,215.91.

**XVI.**

Despite the admission by Paul Kelly, the general manager of Cordova, that "the conduit had obviously never been buried as planned," Cordova has denied any responsibility for the work performed pursuant to the work directive issued by Mid-State.

**XVII.**

The performance of the Contract work required Casey to lay the cable in open seas. As is inherent in such operations, unexpected weather caused the vessels engaged in the cable laying operation to veer off-course for a short period of time. Cordova and Mid-State were promptly made aware of the course change caused by the unexpected weather conditions. Under Article 14 of the Contract, Cordova has thirty (30) days from receipt of notice to provide a written response. Casey notified Cordova and Mid-State of the force majeure event and no written response has ever been received by Casey. The cable laying operation returned to its intended course and continued to lay the cable for the remaining 41 kilometers and to install the cable through the conduit supplied by

Cordova in route to Cordova's land facility.  Thereafter, the cable was tested by third party experts and found to exceed all testing parameters required under the Contract and accepted by Cordova.  Since August 9, 2011, the cable has been in full use by Cordova.  Notwithstanding the above, Cordova has refused to make any further payment to Casey claiming that the change in course caused by the force majeure described above was a breach of contract and has made unsubstantiated claims, without any support, that the cable may have to be moved.

**XVIII.**

Article XIV of the Contract provides that Casey "[s]hall not be responsible for any loss, damage, delay or failure of performance resulting from a Force Majeure event" and "[i]f any such Force Majeure causing an increase in the time or cost required for performance of any of its duties and/or obligations, [Casey] shall be entitled to an equitable extension of time for completion and an equitable increase in the Contract Price for performance of its duties."  If any additional work is needed resulting from the force majeure event, Cordova is responsible for the cost.

**XIX.**

Mid-State had a representative assigned to the work site who was present on the date of the force majeure event.  The owner's representative also visited the work site shortly thereafter.  Not until October 11, 2011, after the entire cable was laid in place, all of the work completed and after Casey submitted its payment application No. 6 did Cordova and Mid-State make any claim of a breach of contract because of the change in course caused by the force majeure event.

**XX.**

Although not required by the Contract, Casey has provided mapping of the area in question showing that there are no wrecks or obstructions located in the area.

### XXI.

Neither Cordova nor Mid-State have assigned any value or loss for additional work or damages due to the course change. Notwithstanding, Cordova has used the force majeure event as a pretext for withholding payment of the entire balance of the Contract price due Casey. Cordova has admitted that the current balance of the Rural Utility Service of the United States of America ('RUS") loan obtained to fund the Contract is not sufficient to satisfy the remaining payment obligation under the Contract.

### COUNT ONE

### Failure to Pay Contract Price

### XXII.

Casey hereby adopts by reference paragraph I through XXI, as if copied herein.

### XXIII.

Cordova is indebted to Casey for the remaining balance of the Contract price in the amount of $1,097,914.25, plus interest and attorney's fees.

### COUNT TWO

### Failure to Pay for Directive Work

### XXIV.

Casey hereby adopts by reference paragraph I through XXI, as if copied herein.

### XXV.

Cordova and Mid-State are jointly and severally liable to Casey for performing of the directive work in the amount of $75,215.91, plus interest and attorney's fees.

## COUNT THREE

### Failure to Properly Administer the Contract

#### XXVI.

Casey hereby adopts by reference Paragraph I through XXI, as if copied herein.

#### XXVII.

Mid-State, as the assigned professional to administer the Contract, had a duty to Casey to perform in a competent manner in accordance with all applicable professional standards and practices.

#### XXVIII.

The Contract, prepared by Mid-State, provided no specification or detail whatsoever regarding the details of information it now claims Casey was obligated to provide with respect to the "Final Route Survey Report." Casey has provided a Final Route Survey in accordance with normal and customary standards applicable to its operations. After completion of the work, Mid-State claimed that the Contract requires a survey containing data and information that far exceed the usual customary standard requirements.

#### XXIX.

Mid-State was promptly notified of the change in course caused by a force majeure and failed to timely notify Casey of any perceived problems created by the course change as required by the Contract.

#### XXX.

Given the recognized and inherent risk of unexpected course change caused by the weather, the Contract specifically provides Casey is not responsible for any loss, damage, delay or failure of


performance resulting from a force majeure event. Despite the terms of the contract, on October 11, 2011–two months after having knowledge of the course change–Mid-State declared Casey in breach of the Contract due to the course change.

**XXXI.**

No breach of contract nor any damages have resulted from the course change caused by the force majeure. Mid-State has misinterpreted the Contract such that the course change is a breach of contract by Casey and has used it as a pretext to withhold the entire remaining payments due Casey.

**XXXII.**

Mid-State has refused to authorize the payment of the work it directed Casey to perform because of the failure of the conduit installed by another contractor who performed such work under Mid-State's administration. Although Mid-State is fully aware that the directive work was due at least in part to its failure to properly administer the conduit contract, Mid-State has refused to authorize payment to Casey claiming that such work is covered by the warranty provided in the Contract. The warranty only extends to the work performed by Casey and specifically states "[t]he warranty by the Contractor shall not apply to defects or failures of performance that result from damage caused by acts or omissions of the Owner or its agents, employees or representatives or third parties . . . ."

**XXXIII.**

When Casey was preparing its work plan for the directive work it requested certain information from Mid-State concerning the construction of the conduit. Mid-State refused and failed to provide complete information, impacting the planning and performance of the directive work.

XXXIV.

Mid-State is responsible for any cost and expense and damages sustained by Casey due to Mid-State's intentional and negligent acts and failure to act in administering the Contract and the conduit contract.

XXXV.

Casey has incurred and will continue to incur damages as a direct and proximate result of Mid-State's negligent and intentional actions and failure to act in an amount that will be proven at trial, and therefore, seeks, without limitation, such damages as are found to be reasonable in the premises.

COUNT FOUR

**Unfair Trade Practice**

XXXVI.

Casey hereby adopts by referenced paragraphs I through XXI, as if copied herein.

XXXVII.

Not until Casey made its last payment application did Cordova begin raising issues concerning the work of Casey.

XXXVIII.

Casey has provided Cordova with a performance bond in the amount of $9,726,095.00, which protects it from any damages arising from the failure of Casey to perform the Contract in accordance with its terms. Despite this protection, Cordova has refused to make any payments of the remaining balance of the Contract price and has made no attempt to quantify its alleged damages. The amount withheld from the Contract far exceeds any potential claim of Cordova.

**XXXIX.**

In response to Cordova's arbitrary position refusing to pay the balance of the Contract price, Casey requested that Cordova verify that it had the available funding. Article 10 of the Contract provides:

> "Upon Contractor's request Owner shall demonstrate to Contractor's reasonable satisfaction that the then current balance of the RUS loan is sufficient to satisfy owner's remaining payment obligations under the Contract."

In response, Cordova admitted that the balance of the RUS funds was not sufficient to pay the remaining Contract price and that payment would have to come from the general account of Cordova, indicating that no reserve exists to provide for this liability.

**XL.**

Casey has incurred and met substantial obligations to subcontractors and suppliers for the work performed on this Contract and is suffering damages due to the failure and refusal of Cordova to make payments due Casey under the terms of the Contract.

**XLI.**

Cordova has indicated that it intends to withhold all payments until such time as Casey agrees to perform work demanded by Cordova which it knows or should know is not required under the terms of the Contract.

**XLII.**

Casey has incurred and will continue to incur damages as a direct and proximate result of Cordova's actions in an amount that will be proven at trial.

WHEREFORE, the premises considered, R.T. Casey, Inc., prays that this Complaint against Cordova Telephone Cooperative, Inc. and Mid-State Consultants, Inc. be deemed good and sufficient, and that after due proceedings, there be judgment in its favor in the following respects:

1.

That monetary damages be entered in favor of Casey against Cordova Telephone Cooperative, Inc. for failure to pay the Contract price in the amount of $1,067,333.78 together with interest from the date payment was due.

2.

That monetary damages be entered in favor of Casey against Cordova and Mid-State, jointly and severally for the directive work in the amount of $75,215.91, together with interest from date of completion.

3.

That monetary damages be entered against Mid-State for its failure to properly administer the Contract in such amounts as are reasonable in the premises together with interest.

4.

That monetary damages, including punitive damages, be entered in favor of Casey against Cordova for unfair trade practices in such amounts as are reasonable in the premises together with interest.

5.

That Casey be awarded attorney's fees, court cost and other expenses incurred in prosecution of this suit and for all general and equitable relief.

Respectfully Submitted,

**GAUDRY, RANSON, HIGGINS
 & GREMILLION, L.L.C.**

 */s/ Daniel A. Ranson*
**DANIEL A. RANSON, T.A. (#11114)**
401 Whitney Avenue, Suite 500
Gretna, LA 70056
Telephone: (504) 362-2466
Facsimile: (504) 362-5938
E-mail: dranson@grhg.net
Attorney for R.T. Casey, Inc.

G:\3356\0005\Pleadings\Complaint.wpd